**UNITED STATES of America, Plaintiff,**

v.

**Sorkis J. WEBBE, Jr., et al.,**
**Defendants.**

**No. 83–242CR(5).**

United States District Court,
E.D. Missouri, E.D.

Nov. 8, 1985.

See also, D.C., 652 F.Supp. 20.

---

**MEMORANDUM**

LIMBAUGH, District Judge.

This matter is before the Court on applications made by three local television stations [1] requesting the opportunity to copy the portions of the tapes admitted into evidence in this case. The issue before the Court involves the proper exercise of discretion to grant access to its judicial records. The applicants seek to copy the audio tapes or portions thereof as soon as practicable after they are played in open court. Both the government and the defendants have objected to the television stations' request.

On November 1, 1985, after this trial commenced on October 21, 1985, represent-

---

**1.** The applications were made by CBS, Inc. on    behalf of KMOX–TV, KTVI–TV and KSDK–TV.

atives of CBS, Inc. requested permission to copy the audio tapes introduced into evidence for broadcasting to the public. A few days later, KTVI–TV and KSDK–TV joined CBS, Inc. in its application. The parties were given an opportunity to argue their positions during a hearing held on November 5, 1985. Applicants assert they have both a common law right and a First Amendment right to copy the portions of the tape admitted into evidence in this case.

■ The Court is not persuaded by applicants' assertion that they have a First Amendment right to copy the tapes in issue. The press has not been excluded from the trial. *Richmond Newspapers, Inc. v. Virginia,* 448 U.S. 555, 100 S.Ct. 2814, 65 L.Ed.2d 973 (1980). Nor has the press been excluded from hearings on pre-trial motions. *Gannett Co. Inc. v. DePasquale,* 443 U.S. 368, 99 S.Ct. 2898, 61 L.Ed.2d 608 (1979). The news media has covered the events of this trial and reported the events to the public. The tapes were played in open court so everyone in the courtroom could hear. During the trial, the Court has released transcripts of the tapes to the media after the tapes were admitted into evidence. The First Amendment does not entitle the press to the actual evidence for copying but only to the information contained in the evidence, here, the tapes. *Nixon v. Warner Communications, Inc.,* 435 U.S. 589, 608–609, 98 S.Ct. 1306, 1317–1318, 55 L.Ed.2d 570 (1978).

Rather than rely on applicants' assertion of a First Amendment right, the Court recognizes the long-standing common law right of access to judicial records. *United States v. Edwards,* 672 F.2d 1289 (7th Cir. 1982); *United States v. Criden,* 648 F.2d 814 (3rd Cir.1981). The right of access to court records antedates the Constitution. *United States v. Mitchell,* 551 F.2d 1252, 1260 (D.C.Cir.1976) *rev'd sub nom. Nixon v. Warner Communications, Inc.,* 435 U.S. 589, 98 S.Ct. 1306, 55 L.Ed.2d 570 (1978); *Criden, supra* at 819. Neverthe-

less, the right "to copy judicial records is not absolute." *Nixon,* 435 U.S. at 598, 98 S.Ct. at 1312. In the *Nixon* case, the Court stated that the trial court's decision as to access to public records is made in light of the relevant facts and circumstances of the particular case. *Id.* at 598–599, 98 S.Ct. at 1312.

Several appellate courts have expanded the media's right to access of judicial records, stating that there is a strong presumption in favor of public access. *United States v. Edwards,* 672 F.2d at 1294. However, the right of access is not absolute. *Nixon,* 435 U.S. at 598, 98 S.Ct. at 1312. For an example, access may be denied if it infringes upon a defendant's Sixth Amendment right to a fair trial. *Edwards,* 672 F.2d at 1294. In addition, courts have denied access when it decides the records would promote public scandal by disseminating disgusting details of a divorce or where the records would become reservoirs of libelous statements for press consumption. *Nixon,* 435 U.S. at 598, 98 S.Ct. at 1312.

The present case involves four defendants. Defendant Sorkis J. Webbe, Jr. is the most prominent among the group. Defendant Webbe has served as Alderman for the Seventh Ward of the City of St. Louis and Committeeman for the Seventh Ward. Defendant Webbe has two pending charges against him in this district. (*United States v. Sorkis J. Webbe, Jr.,* 83–228CR(1) (set for trial January 21, 1986); *United States v. Sorkis J. Webbe, Jr., et al.,* 84–207CR(1)). The government has represented to this Court that some of the tapes used in the current trial will also be used in each of the two pending trials against defendant Webbe. Whether the portions of the tapes admitted into trial in this case will be used in subsequent trials is unclear.[2]

■ The Eighth Circuit Court of Appeals has not squarely addressed the issue now before the Court, though several other Cir-

---

**2.** Defendant Webbe's status in the community posed many problems in selecting a jury for this case. The jury selection process took four days to choose fifteen qualified jurors from a panel of ninety-nine. Numerous jurors were stricken for cause.

cuits have. The Third and District of Columbia Circuits have expounded quite stringent standards for preventing access to the tapes in the *Criden* and *Mitchell* cases. The court in *Criden* and *Mitchell* held that a court should prevent access to tapes only in the most compelling circumstances. The finding that the potential risks to defendants' fair trial rights in those cases would not prevail against the strong presumption in favor of access to judicial records raises the common law right to a constitutional level. *See Belo Broadcasting Corp. v. Clark*, 654 F.2d 423, 434 (5th Cir.1981). This Court is not persuaded upon reading the *Nixon* case that the United States Supreme Court intended the common law right to be given the status of a constitutional right. The Court, in *Nixon*, stated that the presumption in favor of public access is one of the factors to be weighed in the broadcasters' favor. 435 U.S. at 602, 98 S.Ct. at 1314. Consequently, this Court will not rely on the strong presumption in favor of access which has been stated in the Third Circuit in *Criden*.

■ Since the Court has found no First Amendment argument or strong presumption of common law access to judicial records, the question becomes one of defendant Webbe's constitutional rights to a fair trial versus the common law right of access to court exhibits. A defendant's right to a fair trial has been deemed the "linchpin of our criminal justice system." *United States v. Criden*, 648 F.2d at 827. The impact the tapes may have on Webbe's future trials is admittedly uncertain, since the government did not specify whether the taped evidence in the two subsequent trials will overlap with the taped evidence in this trial. Consequently, the Court cannot point out actual prejudice which may befall defendant Webbe. Nevertheless, the Court realizes that the release of the tapes may adversely impact defendant Webbe's right to a fair trial under the Sixth Amendment to the Constitution.

As a result, the Court chooses to protect defendant Webbe's Constitutional right to a fair trial over the media common law right of access. As stated earlier, the Court has determined the First Amendment right of the broadcasters has been fully satisfied in this matter. The Court in no way sought to restrict the media's ability to receive and transmit information regarding this trial. Accordingly, the application of the three television networks to copy the portions of the tapes admitted into evidence in this trial will be denied.